## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| BETTY POST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-00171-JAR |
| ) | |
| DOLGENCORP, LLC, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant Dolgencorp, LLC's motion to limit or exclude the opinions of Plaintiff's treating physician, Dr. Andrew Brown. (Doc. No. 42). Plaintiff filed an untimely response to Defendant's motion (Doc. No. 45), and Defendant filed no reply. For the reasons discussed below, the Court will grant Defendant's motion in part, and deny it in part.

### Background

Plaintiff alleges that while she was shopping at a Dollar General Store owned by Defendant, she slipped and fell on a laminated sign that had fallen into the aisle. Plaintiff claims that she sustained injuries to her knee as a result of the fall and is seeking damages under a premises-liability theory of negligence.

During discovery, counsel for the parties deposed Plaintiff's treating physician, Dr. Brown. Dr. Brown began seeing Plaintiff in October of 2017 following her alleged fall at Defendant's store and continued treating her through April of 2019. (Deposition Transcript (hereinafter, "Tr.") 43:6-10). While Plaintiff was under his care, Dr. Brown diagnosed Plaintiff's injury and performed two surgeries to repair damage to her knee. (Tr. 25:9-24; 33:18 – 34:16).

Defendant requests the exclusion of several opinions Dr. Brown gave during his deposition for two reasons: first, because the opinions are unreliable or irrelevant under *Daubert v. Merrell Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and, second, because Plaintiff failed to properly disclose the opinions under Federal Rule of Civil Procedure 26(a).

## Discussion

### I.    Exclusion Under *Daubert*

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. *Daubert*, 509 U.S. at 590-93 (1993); *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). If the opinion is based solely or primarily on experience, the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts. Fed. R. Evid. 702, Advisory Committee Notes. To be relevant, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Relevance requires the expert's testimony relate to an issue in the case. *See Daubert*, 509 U.S. at 591.

A court is entitled to substantial discretion in determining whether expert testimony should be allowed. "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Russell*, 702 F.3d at 456-57 (quotation omitted).

"[D]oubts regarding the usefulness of an expert's testimony" are resolved in favor of admissibility, *Marmo*, 457 F.3d at 758; *accord Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 562 (8th Cir. 2014), because "[a]n expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury, *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted); *see also Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (quotation omitted).

In the instant motion, Defendant challenges Dr. Brown's opinions as to the cause of Plaintiff's knee injury; the risks of future medical consequences; and the reasonableness and necessity of her medical bills. Each of Defendant's arguments will be discussed in turn.[1]

### 1. Dr. Brown's Opinion Regarding Causation

Defendant claims that Dr. Brown's opinion that Plaintiff's knee injury was caused by her fall at Defendant's store is unreliable. However, Defendant neither explains why Dr. Brown is unqualified to render an opinion as to causation or attacks his methodology in reaching his opinion. In her response, Plaintiff does not address whether Dr. Brown's opinion is reliable.

Dr. Brown's deposition reveals that he is qualified to give causation testimony given that he is a board-certified orthopedic surgeon, specializes in reconstructive surgeries to the knee, and has been practicing for over twenty-eight years. In regard to Dr. Brown's methodology, he testified that he reviewed Plaintiff's medical history, listened to her account of the fall, performed a physical examination, and reviewed both X-rays and an MRI of her knee.[2] Based on this, Dr. Brown found

---

[1] Defendant also challenges Dr. Brown's opinions as to the reasonableness of care performed by other physicians as unreliable. Because the Court finds that these opinions are properly excluded under Rule 37(c), the Court does not address them here.

[2] During the deposition, Dr. Brown was also read a patient history for Plaintiff that was taken by another physician after her fall. After being read that patient history, he was asked whether that patient history informed his opinion about the causation of Plaintiff's injuries. The Court will not consider how the work

that the fall was consistent with and "could certainly [have] cause[d]" the injury to her knee. Dr. Brown further testified that this opinion was based on a reasonable degree of medical certainty. Given Dr. Brown's extensive training and experience and the substantial medical evidence he considered, the Court cannot say that Dr. Brown's opinion "is so fundamentally unsupported that it can offer no assistance to the jury." As a result, the Court will not exclude Dr. Brown's causation testimony as unreliable.

### 2. Dr. Brown's Opinions Regarding Future Medical Risks

Defendant also challenges Dr. Brown's opinion as to Plaintiff's "surgical risks and future surgical need." Defendant argues that because Dr. Brown cannot say for certain that Plaintiff will need a future knee replacement, his testimony is only speculative, and thus unreliable. Defendant further asserts that Dr. Brown's testimony that the arthroscopy surgery[3] he performed on Plaintiff puts her at risk of needing future surgeries is unreliable, irrelevant, and lacks foundation. Plaintiff does not address the testimony's relevance or reliability.

Under Missouri law, a plaintiff can present evidence of the risk of future medical consequences posed by a present injury to recover under two distinct theories. *Ball v. Allied Physicians Grp., L.L.C.*, 548 S.W.3d 373, 382 (Mo. Ct. App. 2018). She may use the evidence "to establish either the value of the present injury, or separately, to recover a monetary award to reimburse the plaintiff for the actual medical costs to treat a secondary injury that has not yet

---

of another physician informed Dr. Brown's opinion because this section of testimony should be struck under Rule 37(c).

[3] An arthroscopy is a procedure for diagnosing and treating joint problems, wherein a surgeon inserts a narrow tube attached to a fiber-optic video camera through a small incision. A surgeon can then inspect the joint or repair some types of joint damage. *Arthroscopy*, MAYO CLINIC https://www.mayoclinic.org/tests-procedures/arthroscopy/about/pac-20392974 (last visited June 1, 2020).

occurred but is a consequence of the original injury." *See id.* (citing *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 130-31 (Mo. 2007)).

The two theories of recovery, however, have different burdens of proof. *See id.* (citing *Swartz*, 215 S.W.3d at 130-31). Where a plaintiff seeks to recover medical costs associated with a future injury that has not yet occurred, the plaintiff "must prove that the future injury itself is reasonably certain to occur." *Id.* (citing *Swartz*, 215 S.W.3d at 130). A plaintiff cannot prove that a future injury is reasonably certain to occur by presenting evidence that is speculative or creates a "mere possibility" of the need for future medical treatment. *McKersie v. Barnes Hosp.*, 912 S.W.2d 562, 566 (Mo. App. E.D. 1995) . By contrast, where plaintiff is attempting to aid the jury in determining the extent and value of a present injury, "the plaintiff can present expert testimony to a reasonable degree of medical certainty that the defendant's conduct placed the plaintiff at an increased risk of suffering possible future consequences." *Ball*, 548 S.W.3d at 382 (citing *Swartz*, 215 S.W.3d at 130-31 (citing *Emery v. Wal-Mart Stores, Inc.*, 976 S.W.2d 439, 447 (Mo. banc 1998)). Thus, plaintiff's burden is less onerous under the second theory of recovery because she must merely show that she has some increased probability of sustaining future injury. *See id.*; *Swartz*, 215 S.W.3d at 133 ("That [plaintiff's] present injury brings with it this increased risk of future injury 'is information the jury should have in the difficult task of trying to give plaintiff's condition a dollar value.'" (citation omitted)).

In her Petition, Plaintiff seeks damages for both future medical expenses and for her present injury. However, Plaintiff does not specify the theory for which Dr. Brown's risk-of-future-injury testimony was being used. To the extent that Plaintiff elicited Dr. Brown's testimony to prove that she is entitled to damages for future medical treatment—whether that be for a future knee replacement or to treat a future tear—the Court finds that it is inadmissible. Dr. Brown never

testified that it was reasonably certain that Plaintiff would suffer a future injury requiring medical treatment; rather, he testified only that such treatment was probable and possible. (Tr. 10:15-19 ("[P]atients who've had ACL injuries, as well as cartilage injuries . . . will probably develop some degeneration in their knee. Some will go on to knee replacement, some will not . . . ."); (Tr. 10:21 – 11:1 (testifying that he could not say that Plaintiff will need surgery but that it was "possible")). Because this testimony does not create more than a mere possibility of future medical treatment, Plaintiff cannot use it as evidence that she should be reimbursed for future medical treatment.

On the other hand, Plaintiff may use Dr. Brown's testimony as evidence of the nature and extent of her present injury.  Plaintiff is allowed to present evidence that Defendant's conduct resulted in an increased risk of future harm, even if that risk is not reasonably certain to occur. *Swartz*, 215 S.W.3d at 131. ("Missouri courts have long held that such testimony is admissible to aid the jury in assessing the extent and value of the plaintiff's present injuries, even if those future consequences are not reasonably certain to occur.").  Here, Dr. Brown testified that, to a reasonable degree of medical certainty, Plaintiff's alleged injury at Defendant's store put her at risk of her ACL degenerating or re-tearing,[4] which may necessitate future treatment.  The Court finds that Dr. Brown's specialized medical qualifications, his personal knowledge of Plaintiff's injury, and his experience working with numerous patients who have had similar injuries as Plaintiff make his opinions as to her increased risk of future injury reliable.  Further, the Court believes that this evidence is relevant because it will assist the jury in determining the value of Plaintiff's alleged injuries.  As a result, the Court will not exclude Dr. Brown's testimony as to Plaintiff's increased risk for future medical consequences but will limit the purpose for which that testimony may be admitted.

---

[4] As discussed in more detail below, Dr. Brown's testimony that Plaintiff has a 10-20 % likelihood of re-tearing her knee will, however, be excluded under Rule 37(c).

6

### 3. Dr. Brown's Opinion Regarding the Reasonableness and Necessity of Medical Bills

During the deposition, Defendant objected to Dr. Brown's opinions as to the reasonableness and necessity of Plaintiff's medical bills as being without foundation and based on speculation. Plaintiff presented no argument that Dr. Brown's testimony regarding medical bills is reliable.

Dr. Brown gave the following testimony during his deposition:

| | |
|---|---|
| DEFENSE COUNSEL: | Have you reviewed any of her medical bills? |
| DR. BROWN: | No, I don't routinely do that. |
| DEFENSE COUNSEL: | Okay. And so it would be fair to say, again just to make sure that we're clear for the record, you're not going to offer any opinion as to the reasonableness nor necessity of her medical bills, are you? |
| DR. BROWN: | No, I'm not. |
| DEFENSE COUNSEL: | Okay. |
| DR. BROWN: | I mean, we send the bills, so I guess they're necessary. I mean, that's how we do business, but I mean, I don't know that there are any unnecessary charges or anything of that sort. I don't know. |

(Tr. 11:25 – 12:14).

| | |
|---|---|
| PLAINTIFF'S COUNSEL: | [W]ere your charges in October of 2017 fair and reasonable for the services provided? |
| . . . . | |
| DR. BROWN: | I hope so. I mean, to be honest with you, I have nothing to do with our billing. |

(Tr. 25:13-20).

7

Based on this testimony, it is clear that the jury would not benefit from Dr. Brown's opinion as to the reasonableness or necessity of Plaintiff's medical bills, and therefore the Court will exclude the portions of Dr. Brown's testimony that concern those conclusions.

**II.    Disclosure Requirements under Rule 26(a) for Treating Physicians**

Under Federal Rule of Civil Procedure 26(a), "the nature and extent" of what a party needs to disclose about its expert witness "turns on whether or not the expert witness is 'retained or [specially] employed to provide expert testimony in the case." *Vanderberg v. PetCo Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26(a)(2)(B)). Although a party is required to disclose all witnesses who will give expert testimony, only witnesses who are "retained or specially employed to provide expert testimony must submit written reports." Fed. R. Civ. P. 26(a)(2)(A)-(B).[5] "The disclosure rule is less demanding for experts that are not [specially] employed or retained for litigation . . . ." *Vanderberg*, 906 F.3d at 702. For these experts, parties need only disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). If a party fails to meet the applicable disclosure requirements, Rule 37(c) provides that the party will not be

---

[5] The Relevant language from Rule 26 is as follows:

(2) ***Disclosure of Expert Testimony.***

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case . . . .

Fed. R. Civ. P. 26(a)(2)(A)-(B).

allowed to use that information or witness "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In deciding whether evidence should be excluded, the Court should be cognizant that "the exclusion of evidence is a harsh penalty and should be used sparingly." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).

Whether a treating physician is "retained or specially employed to provide expert testimony"—and, thus, whether he is required to file an expert report under Rule 26(a)(2)(B)—depends on the substance of the physician's opinion. *See Avendt v. Covidien Inc.*, 314 F.R.D. 547, 557 (E.D. Mich. 2016). "When a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) report." *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV, 2018 WL 4539706, at *4 (S.D. Fla. Sept. 21, 2018) (quoting *In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5199597, at *2 (S.D. Fla. Oct. 22, 2012)); *see also Schultz v. Ability Ins. Co.*, No. C11-1020, 2012 WL 5285777, at *4 (N.D. Iowa Oct. 25, 2012) (finding that treating physician did not have to submit a report because his opinions were formed during the course of treatment). However, if a treating physician "seeks to testify outside the scope of the treatment rendered," the physician is considered "retained" to provide expert testimony and will need to file an expert report. *See Dixon v. Legacy Transportation Sys., LLC*, No. 2:15-CV-01359-JADPAL, 2017 WL 4004412, at *3 (D. Nev. Sept. 11, 2017); *see also Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ.*, No. 1:15-CV-427, 2018 WL 1627160, at *3 (M.D.N.C. Mar. 30, 2018) ("[C]ourts have required treating physicians who give opinions formed outside the scope of the patient's treatment and diagnosis to file an expert report.").

In the instant motion, Defendant argues that Dr. Brown's opinions as to the cause of Plaintiff's knee injury, the risk of future medical consequences, and the treatment of other physicians should all be excluded because Dr. Brown did not file an expert report.[6]

### 1. Disclosure of Dr. Brown's Opinion Regarding Causation

Defendant asserts that Dr. Brown's opinion as to causation should be excluded because Dr. Brown never filed an expert report. However, in making this argument, Defendant does not explain if Dr. Brown's opinion as to the causation of Plaintiff's injury was formed outside the scope of treatment.[7] In response, Plaintiff argues that Dr. Brown did not have to file an expert report concerning causation because he was not "retained or specially employed" by counsel. Similar to Defendant, Plaintiff does not argue about whether Dr. Brown's causation opinions were formed during the scope of treatment.

Treating physicians who provide causation opinions are not automatically required to file an expert report. *See Cutsinger v. Gyrus ACMI, Inc.*, No. 4:18-CV-4 CAS, 2018 WL 6064856, at *3 (E.D. Mo. Nov. 20, 2018) (finding that a treating physician was not required to file an expert report concerning his opinions as to causation). Instead, an expert report only needs to be given if it was formed outside the scope of Dr. Brown's treatment of Plaintiff. Upon review of Dr. Brown's testimony, it is clear that Dr. Brown formed his opinion that Plaintiff's fall in Defendant's store caused her injury during the course of his treatment. Specifically, Dr. Brown explained that he

---

[6] Defendant also argued that Dr. Brown's testimony as to the reasonableness and necessity of medical bills should be excluded for failure to disclose under Rule 26(a). This argument will not be addressed because these opinions are properly excluded as being unreliable.

[7] In support of its argument that Dr. Brown needed to file an expert report, Defendant cites to *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1207 (8th Cir. 2000), which held that a treating physician's expert opinion on causation was subject to the same standards of scientific reliability that govern the opinions of physicians hired for litigation. Although this is accurate, the argument concerns the reliability inquiry under *Daubert* not the disclosure requirements of Rule 26(a)(2). The two inquiries are distinct.

came to that conclusion based on his review of Plaintiff's medical history, her account of the fall, his physical examination, and his review of both her X-rays and MRI.  Because Dr. Brown formed his causation opinion while treating Plaintiff,  he was not required to file an expert report under Rule 26(a)(2)(B); rather, Plaintiff only needed to disclose the subject matter of Dr. Brown's expert testimony and a summary of the facts and opinions to which  he was going to testify.

Plaintiff identified Dr. Brown as a non-retained expert witness and stated that he was "expected to have knowledge concerning the cause . . . of Plaintiff's injuries."  Plaintiff also provided Defendant with copies of the medical records associated with Dr. Brown's treatment of her.  However, because Plaintiff did not provide a summary of the facts and opinions that Dr. Brown was expected to testify to, the Court is not persuaded that this disclosure is adequate even under the less onerous requirements of Rule 26(a)(2)(C).  *See Cody v. Hastings*, No. 4:16 CV 1632 (JMB), 2018 WL 6830098, at n.1 (E.D. Mo. Dec. 27, 2018) (doubting that a disclosure that the treating physician had "discoverable information . . . including issues of causation" properly summarized the facts and opinions the physician was expected to testify to under Rule 26(a)(2)(C)).

Having found that Plaintiff did not adequately comply with Rule 26(a)(2)(C),  the Court must determine whether Dr. Brown's testimony regarding causation should be excluded under Rule 37(c).  The Court notes that Defendant did not argue that it suffered any harm or prejudice for Plaintiff's failure to disclose.  Plaintiff, however, argues that any failure to disclose was harmless to Defendant because (1) Defendant was put on notice that Dr. Brown had opinions as to causation, (2) that Defendant was familiar with the scope and length of Dr. Brown's treatment of Plaintiff because it had access to her medical records, and (3) that Defendant was aware of Plaintiff's theory

11

of causation. Upon careful consideration, the Court finds that Plaintiff's failure to summarize Dr. Brown's opinion was harmless and will not invoke the "harsh penalty" of exclusion.

### 2. Disclosure of Dr. Brown's Opinion as to Future Medical Risks

Defendant and Plaintiff similarly did not address whether Dr. Brown formed his opinion as to Plaintiff's future medical risks during the scope of his treatment of Plaintiff. Upon review, the Court finds that a majority of Dr. Brown's opinions as to Plaintiff's future medical risks were formed during his treatment of Plaintiff because he testified to discussing these risks with her while he was her physician. The Court does, however, find that Dr. Brown's opinion that Plaintiff had a 10-20% chance of re-tearing her ACL was formed outside his treatment of Plaintiff because he based this opinion on a "conglomeration" of unnamed studies. ("[T]he tear rate can be anywhere from 10 to 20 percent, re-tear rate after the surgery. Some studies can be even higher." (Tr. 42:12-14); "These are a conglomeration of various studies looking at various factors, and some report higher, some report lower [then 10 to 20%]." (TR. 42:20-23)). Because opinions "based on information the physician learns outside the course of treatment is retained-expert testimony," Dr. Brown was thus required to author an expert report as to this opinion as required by Rule 26(a)(2)(B). *See Lowery v. Ace Am. Ins. Co.*, No. CV 17-248-BAJ-RLB, 2019 WL 2566523, at *2 (M.D. La. Mar. 12, 2019) (finding that doctor's opinion based on undisclosed outside literature he consulted was retained-expert testimony).

The Court again finds that Plaintiff did not meet the disclosure requirements of Rule 26(a) for any of the opinions Dr. Brown gave as to Plaintiff's future medical risks. Dr. Brown did not file an expert report about his opinion that Plaintiff had a 10 to 20 % probability of re-tearing her ACL. Further, Plaintiff failed to supply a summary of Dr. Brown's facts and opinions as to this category of testimony because she only identified that Dr. Brown would have "knowledge concerning the .

. . nature, [and] extent of Plaintiff's injuries." As a result, the Court must determine whether exclusion is required under Rule 37(c).

The Court again notes that Defendant did not specify that it suffered any harm due to Plaintiff's insufficient disclosure. Plaintiff argues that Defendant experienced no prejudice because (1) Defendant was put on notice that Dr. Brown had information as to the nature and extent of Plaintiff's injury; (2) that Defendant showed awareness of future medical risks at the deposition; and (3) that Defendant was aware of Plaintiff's theory of damages. Given that Defendant did show awareness at the deposition that Dr. Brown had knowledge of potential future medical risks and even asked questions about the potential of future surgeries, the Court finds that Defendant by and large did not experience any harm from Plaintiff's failure to disclose—with one exception. The Court does find that the segments of Dr. Brown's testimony that were based on a "conglomeration" of unspecified studies were prejudicial to Defendant who could not prepare an informed line of questioning to assess the credibility of these opinions. As a result, the Court will exclude Dr. Brown's testimony that Plaintiff had a 10 to 20% chance of re-tearing her knee. The rest of Dr. Brown' testimony as to future medical risks will be admitted.

### 3. Disclosure of Dr. Brown's Opinion Regarding Other Physicians' Treatment of Plaintiff

Defendant also argues that Dr. Brown's testimony about other physicians' treatment of Plaintiff should be excluded because Dr. Brown did not prepare an expert report. During the deposition, Plaintiff's Counsel asked Dr. Brown questions that elicited facts about the treatment of Plaintiff by another Physician, Dr. Keith Frederick (who appears to have treated Plaintiff before Dr. Brown). Plaintiff's Counsel read to Dr. Brown the patient history Dr. Frederick took during his visit with Plaintiff and asked Dr. Brown whether Dr. Frederick's history supported his opinion as to the cause of Plaintiff's injury. (Tr. 39:25 – 41:7). Subsequently, Plaintiff's Counsel asked

13

Dr. Brown, over Defendant's objection, to testify as to the reasonableness of treatment that other doctors performed on Plaintiff, including: her treatment at a hospital emergency department, an x-ray of her ankle, an x-ray of her hip, a drug injection of Toradol, and an MRI.  (Tr. 49:3 – 52:9). Dr. Brown testified that at no point during his treatment of Plaintiff was he provided with the records of these treatments.  ("I don't have anything other than my records, which do not include anything before  I saw her . . . ." (Tr. 11: 15-18)).

Because Dr. Brown did not rely on Dr. Frederick's history in forming his causation opinion or consider the reasonableness of other physicians' care during his treatment of Plaintiff, this testimony falls outside the scope of his treatment of Plaintiff.  As such, Dr. Brown was required to write an expert report regarding these opinions, which he did not do.  Plaintiff argues that Defendant is not prejudiced by this failure to disclose because Defendant was given all of Plaintiff's previous medical records and was on notice that Dr. Brown had opinions concerning the nature, extent, and cause of Plaintiff's injuries.  Although the Court recognizes these points, the Court does not believe that Defendant was reasonably put on notice that Dr. Brown would be used as a vehicle to elicit facts about Plaintiff's treatment by other medical professionals. Because the Court does not find Plaintiff's disclosure failure to be harmless for this segment of testimony, the Court will exclude it under Rule 37(c).

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to exclude Dr. Andrew Brown's testimony **is GRANTED in part and DENIED in part**. Dr. Brown's testimony as to (1) the reasonableness and necessity of medical bills, (2) the 10 to 20% likelihood of Plaintiff re-tearing her ACL, (3) how Dr. Frederick's patient history informed his causation opinion, and (4) the

reasonableness of treatment ordered and performed by other physicians or medical personnel is **EXCLUDED**.  The remainder of Dr. Brown's testimony will be admitted.

    Dated this 22nd day of June, 2020.

                                                           _____
                                                           JOHN A. ROSS
                                                            UNITED STATES DISTRICT JUDGE